# Holley A. Hoffman, Esq.

4542 Norma Drive
San Diego, CA 92115
(619) 890-8683
holleyhoff@yahoo.com

October 4, 2021

Don Moody
dmoody@cliq.com

Re: *Marquess, et al v. Cardflex, Inc., et al,* Case No. 19-CV-04790-ERK-AYS
Meet and Confer

Mr. Moody:

Your October 1, 2021 letter in response to my September 28, 2021 meet and confer letter is deficient with respect to your obligation to produce documents on September 22, 2021 pursuant to your agreement to do so pursuant to the April 30, 2021 joint letter to the Court. I will reply with the headings you supplied in your letter.

1. CardFlex's Document Production

In this section, you state you are "[a]ddressing each of the three categories of documents mentioned in the M&C Letter …." In actuality, I addressed four categories of documents I requested in my meet and confer letter. You chose to ignore the last category: "Marketing Agreement(s) among the various Defendants." I ask you once again to provide agreements between CardFlex and any other Defendant, including First Data Merchant Services, an agent of Wells Fargo.

You state you do not possess Skinitems' merchant statements, specifically, you "did not create or author any 'Merchant statements.'" Further, you stated you "relied on third parties, such as First Data to generate statements and the information contained in them. Your denial misrepresents (at best) the facts. CardFlex provided Plaintiffs with merchant statements from the inception of Plaintiffs' account with CardFlex until USAG

1

took over and provided its merchant statements to Plaintiffs beginning in February 2011. In fact, on September 22, 2021, Plaintiffs produced to Defendants (including you) Skinitems merchant account statements "create[d] [and] author[ed]" by CardFlex from the month ending August 31, 2010 until USAG began processing the Skinitems account (see MARQ 001451-001460). Moreover, First Data never provided Plaintiffs with merchant statements. Plaintiffs and Plaintiffs' counsel were not aware First Data had access to and processed Plaintiffs' account until that fact was disclosed in Wells Fargo's initial disclosure on August 28, 2021.

With respect to Plaintiffs' placement on the TMF/MATCH lists, you claim: (1) Kelly Cullum, who informed Mr. Marquess he was placed on the MATCH list "by CardFlex at the request of Wells Fargo," is an employee of Super G, not CardFlex; and (2) "At most, CardFlex may have simply pointed out that Mr. Marquess' business had excessively high chargebacks ...." However, you assured me you "are still attempting to research whether there may be additional emails or letters concerning Marquess and the TMF/MATCH list generally" and you "will advise if/when we find something additional that is responsive."

First, Ms. Cullum is employed with Super G, a company that provided funding to CardFlex. She was involved with Plaintiffs' account and wrote and received several emails to and from Mr. Marquess. Second, you have had since July 27, 2021, when the Court filed its schedule plan that notified all counsel of discovery and motion deadlines in this case, to "research" and locate documents. The document production was due on September 22, 2021. You agreed on April 30, 2021, five months ago, to provide these documents. Your vague assurance is unacceptable. Please produce the documents now.

In an apparent effort to claim CardFlex does not possess documents, now or in future requests for production of documents, you complain "due to the age of this dispute, it is highly likely that not only does CardFlex not have many of the documents Mr. Marquess is seeking, *no one else does either*, and Mr. Marquess bears at least some modicum of responsibility for that fact." (Emphasis in original.) Rather than leave it to Defendants to merely claim they do not possess documents (as you claimed regarding the merchant statements), I intend to request the Court order all discovery responses be verified under penalty of perjury. Either CardFlex and the other Defendants produce documents through document requests or swear they have nothing else, in which case the documents produced by Plaintiffs will tell the story of what happened in this case.

2. Plaintiffs' Document Production

The only complaint you have concerning Plaintiffs' document production is that Plaintiffs produced the Visa International Operating Regulations as Plaintiffs agreed in the April 30, 2021 joint letter to the Court to produce "Documents identified in the Complaint." The Visa rules were identified in the Complaint. Particularly relevant here is that the 2010 Visa rules were referenced in the Complaint, the very rules I provided. The 2010 Visa rules and regulations governed Defendants' agreements and conduct in processing Plaintiffs' Skinitems account. Defendants' violations of those rules and regulations will be quite relevant at trial.

3. Getting back to the "Elephant in the Room"

You state here, "be advised that we are not going to allow any routine discovery dispute to direct attention away from your client's alleged submission of forged/altered evidence, so he may as well divorce himself from that idea right now." Indeed, Defendants have claimed Mr. Marquess allegedly submitted forged or altered documents. Defendants' assertion has absolutely nothing to do with the discovery dispute at hand.

4. Mr. Marquess Bears the Burden of Proof, not the other way around.

Your averments in this paragraph are patently absurd. Plaintiffs are well aware they have the burden of proving an unlawful termination of Plaintiffs' purported contract and all damages arising therefrom. The Complaint stated more than sufficient facts to support the allegations, and Plaintiffs have already produced ample evidence to further support the allegations. Defendants, however, bear the burden of proving their affirmative defense of fraud. Once again, this has nothing to do with the discovery issues.

5. Exploring Additional Avenues for Redress

Here, you appear to threaten Mr. Marquess with criminal prosecution: "in particular, we [previously identified USAG and Wells Fargo] feel that multiple crimes may have

3

been committed here, and there is no need for someone to have to wait for a 'taped confession' or proverbial 'dead body' before reporting a crime to the proper authorities. All one needs is sufficient facts and evidence to demonstrate *probable cause*, and in our view the situation as it stands right now more than qualifies." (Emphasis in original.) You then cited specific Texas State and Federal criminal statutes and your evaluation of how the statutes allegedly relate to Mr. Marquess and "jail time as a very possible outcome."

Rule 3.4 (c) of the New York Rules of Professional Conduct ("Rules") prohibits lawyers from threatening criminal charges solely to obtain an advantage in a civil matter. Rules 4.4 and 4.1 also circumscribe a lawyer's discretion in threatening criminal prosecution. Rule 4.4 prohibits a lawyer from using tactics "that have no substantial purpose other than to embarrass, delay, or burden a third person…." Rule 4.1 requires a lawyer to be truthful in his communications with third persons. Thus, a lawyer who threatens criminal prosecution for the purpose of harassing the other party or who threatens criminal prosecution with no intention of bringing charges engages in unethical conduct.

New York State Bar Association Opinion 772 (2003) addressed the issue of threats under the New York Code of Professional Responsibility:

> In our view, there is no universal standard to determine whether a letter 'threaten[s] to present criminal charges.' Such a determination requires the examination of both the content and context of the letter. In our view, a letter containing an accusation of criminal wrongdoing constitutes a threat, especially when coupled with a demand that the accused wrongdoer remedy the civil wrong. Whether the accusation is general … or specific …, such an accusation serves the undeniable purpose of coercing the accused wrongdoer. We point out, moreover, that a lawyer who sends a letter containing such a communication is exposed to professional discipline based upon the disciplinary authorities' interpretation of the lawyer's intent in sending the letter or statement.

There is no doubt you, Mr. Moody, are threatening criminal prosecution in an effort to obtain an advantage in this case. Your threats are accompanied by your stated desire that you "sincerely hope that [my] client will consider dismissing the case and moving

on." Thus, it appears clear that these threats constitute the "undeniable purpose of coercing" Mr. Marquess to dismiss his lawful Complaint against all Defendants.

In fact, Mr. Marquess has violated no law for which you can rightfully and justifiably file criminal charges against him. Mr. Marquess stands by the fact that he requested and received the copies of the November 2012 Bank of America statements in 2016. Plaintiffs provided Defendants with his 2016 bank statements that included the fees he was charged for the copies of those statements. You accuse Mr. Marquess of bank and wire fraud. Even if such charges were to be brought based on a mistaken belief that the documents were forged, such charges would involve Bank of America, not Defendants in this case. Mr. Rudd, counsel for Bank of America, objected to the production of Plaintiffs' November 2012 bank statements for Plaintiffs' three accounts on the basis that the production was too burdensome. When Mr. Bender asked Mr. Levy, Bank of America's representative who was deposed, whether Mr. Levy knew if the data for the accounts could be accessed, Mr. Levy did not know. When Mr. Bender asked Mr. Levy whether he knew who at Bank of America would have that information, Mr. Levy did not know. Mr. Bender requested a space be inserted in the deposition so Mr. Levy could provide the name of an individual who would have knowledge of the data. Mr. Rudd interjected he would "take it under advisement." No information from Bank of America or Mr. Rudd has been forthcoming. Bank of America has never affirmatively declared it does not have access to the original bank statements in its possession. As for Mr. Levy's testimony, it will be scrutinized and impeached at trial.

Again, your allegations and threats are in no way related to the discovery dispute.

6. Taking a Step Back

I really don't know what you are attempting to accomplish in this paragraph other than accusing Plaintiffs of filing this lawsuit in hopes of generating a "'quick settlement'" from Defendants, and to propose in an inartful fashion that Plaintiffs' case is a loser. First, Plaintiffs have never approached any Defendant about settlement. In fact, the only settlement negotiation in this case was initiated by Mr. Knoop when he contacted Mr. Bender in July 2020. Mr. Knoop requested Mr. Bender provide the bank statements and a summary of monies taken from Plaintiffs. In an effort to resolve the matter informally and with professionalism, Mr. Bender complied with Mr. Knoop's request.

How is this remotely related to the discovery issues at hand?

7. There is Still an Opportunity to Do the Right Thing.

After slandering Mr. Marquess and his motives in numerous instances and unethically threatening him with criminal prosecution, you suggest Plaintiffs "do the right thing" and simply dismiss this case and move on. That is not going to happen. Period.

Please produce the documents you agreed to produce in the Parties' joint letter to the Court on April 30, 2021. My next course of action will be to file a motion to compel the production of the documents with a request for sanctions.

Sincerely,

/s/ Holley A. Hoffman
Attorney for Plaintiffs