| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| GREGORY MARQUESS d/b/a<br>SKINITEMS.COM and SKINTRIGUE,<br>INC., | **MEMORANDUM AND ORDER** |
| Plaintiffs,<br>– against – | 2:19-cv-04790 (ERK) |
| CARDFLEX, INC. d/b/a CLIQ, WELLS<br>FARGO BANK, N.A., U.S. ALLIANCE<br>GROUP, and JOHN DOES 1–10<br>INCLUSIVE, | |
| Defendants. | |

KORMAN, *J.*:

On November 26, 2018, plaintiffs Gregory Marquess d/b/a Skinitems.com ("Skinitems") and Skintrigue, Inc. ("Skintrigue")—a company owned and operated by Marquess—commenced this action for monetary damages occasioned by an alleged breach of contract by defendants. Presently pending before the Court is a motion by defendants Wells Fargo Bank, N.A. ("Wells Fargo"), CardFlex, Inc. ("CardFlex"), and U.S. Alliance Group ("USAG") to dismiss plaintiffs' second amended complaint for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) and for the sanction of dismissal pursuant to Federal Rule of Civil Procedure 37(b)(2)(A). ECF Nos. 125, 131, 134.

1

## BACKGROUND

The factual background underlying plaintiffs' complaint is set forth in my February 2, 2021 order granting in part and denying in part defendants' motions to dismiss for failure to state a claim. *Marquess v. CardFlex, Inc.*, No. 2:19-CV-04790 (ERK), 2021 WL 355153 (E.D.N.Y. Feb. 2, 2021). The remaining claims, as set forth in plaintiffs' second amended complaint, are (1) Marquess's breach of contract claim; (2) Marquess's breach of the implied covenant of good faith and fair dealing claim; (3) both plaintiffs' unjust enrichment claim; and (4) both plaintiffs' money had and received claim. ECF No. 46 ¶¶ 133–60. The complaint concerns events that allegedly occurred in November 2012. *Id.* ¶¶ 105–06. Plaintiffs filed the summons in this case six years later, in November 2018. ECF No. 1-1 at 10. The first complaint was not filed until August 2019. *Id.* at 46.

### A. Attorneys

Plaintiffs had three attorneys throughout the pendency of this case, all of whom have withdrawn from the representation. These withdrawals caused numerous delays. First, in February 2019, before the complaint was filed, CardFlex advised plaintiffs' first attorney—Jonathan Miller—that it appeared that plaintiffs had fabricated certain emails. ECF No. 64-3 at 2–3. Indeed, the alleged author of the emails stated that she did not write them, and there are numerous clear discrepancies between the author's real emails and the ones plaintiffs alleged

2

that she wrote. *See id.* at 10–13; ECF No. 64-5 at 2. Several months later, in May 2019, Miller moved to withdraw as plaintiffs' counsel. ECF No. 64-4. Miller explained that "In reviewing this matter, a certain issue was identified, necessitating the need to better authenticate certain evidence." *Id.* ¶ 9. Miller proposed two options: (1) dismissing the case against CardFlex and Wells Fargo but continuing the case against USAG; or (2) subpoenaing Google for the emails at issue. ECF No. 132-1. Rather than accepting either option, Marquess selected a third option to "part ways." *Id.*; ECF No. 64-4 ¶ 9.

In November 2020, plaintiffs' second attorney—Howard Bender—issued a subpoena to Google to obtain access to plaintiffs' email account to recover the original emails at issue and produce them. ECF No. 64-6 at 4. After obtaining access, Bender could not locate the emails. *Id.* at 2. Defendants also informed Bender multiple times of their authenticity concerns with respect to plaintiffs' bank statements purporting to show that defendants seized a total of $123,956.14 from plaintiffs' accounts, discussed *infra*. *See* ECF No. 64-1 at 5–8. In June 2021, Bender moved to withdraw due to plaintiffs' failure to pay him. ECF No. 60-1 ¶ 6. Judge Shields granted the motion and stayed the case for 30 days.

In July 2021, plaintiffs retained their third attorney—Holley Hoffman—as pro bono counsel. ECF No. 74. Judge Shields granted a 30-day extension of the

3

discovery deadline. In November 2021, after representing plaintiffs for only four months, Hoffman moved to withdraw. ECF No. 86-1. Hoffman explained:

> Mr. Marquess has refused to communicate with counsel despite myriad attempts by counsel to engage Mr. Marquess in communication and cooperation. In addition, Mr. Marquess has refused to pay costs and fees for necessary consultants retained on Mr. Marquess' behalf with his consent and with his promise to pay. Finally, Mr. Marquess has refused to pay counsel for costs that she paid on his behalf with his consen[t], and with his promise to pay.

*Id.* at 3; *see also* ECF No. 87. Judge Shields granted the motion to withdraw and again stayed the case for 30 days. On January 13, 2022, Marquess informed the court that he would be proceeding *pro se*. ECF No. 94. On February 15, 2022, Judge Shields ordered that the stay remain in effect until the next status conference.

### B. Discovery Orders

Throughout this period, plaintiffs repeatedly failed to comply with discovery orders. On April 30, 2021, plaintiffs agreed to produce "Documents identified in the Complaint" by September 22, 2021. ECF No. 56 at 4–5; ECF No. 72-1 at 1. On November 8, 2021, Wells Fargo specified twenty documents "identified in the Complaint" that plaintiffs did not produce. ECF No. 131-4 at 4–6. Despite Judge Shields's November 2, 2021 order that the parties "confer" regarding these and other "identified deficiencies" within a week, plaintiffs never did. Instead,

4

plaintiffs' third attorney Hoffman moved to withdraw on November 23, 2021. ECF No. 86.

On March 7, 2022, Judge Shields again ordered plaintiffs to "produce documents requested by Defendants and correct any deficiencies in [their] discovery responses" by April 7. That same day, Wells Fargo sent a list of outstanding discovery responses to plaintiffs, including the unanswered November 8, 2021 letter. ECF No. 131-5 at 2–3, 5, 28–34. On April 7, 2022, plaintiffs served general objections to Wells Fargo's second set of interrogatories. ECF No. 131-6. A day after the court's deadline, on April 8, 2022, plaintiffs served: (1) a letter addressing some but correcting none of the deficiencies Wells Fargo had identified in its November 8, 2021 letter; (2) general objections to Wells Fargo's first set of interrogatories and second set of requests for production; (3) a letter advising that Marquess mailed a copy of a video to each of the defendants; and (4) a letter criticizing the defendants' responses to plaintiffs' interrogatories. ECF No. 131-7. Then, on April 9, 2022, plaintiffs served "Amended" objections—again, mostly general—to Wells Fargo's first set of requests for production. ECF No. 131-8.

On April 15, 2022, Wells Fargo moved to stay discovery pending this motion to dismiss. ECF No. 10. On May 2, 2022, plaintiffs responded, disagreeing with Wells Fargo's characterization of their discovery responses (or

5

lack thereof), complaining about the defendants' productions, and representing that they had "prepared additional documentation," which they would send to Wells Fargo. ECF No. 117. Wells Fargo never received any additional documentation. ECF No. 131-1 at 7.

### C. Bank Statements

In addition to the purportedly fabricated emails, the defendants plausibly accuse plaintiffs of "clearly fabricat[ing] Bank of America statements." ECF No. 131-1 at 2. The bank statements plaintiffs rely on purport to show that defendants seized a total of $123,956.14 from plaintiffs' accounts. ECF No. 46 ¶ 105. Wells Fargo points to several indications that the bank statements are fabricated. *See* ECF No. 131-1 at 2–3.

First, Wells Fargo contends that "[t]he alterations to the [s]tatements are obvious on their face," based on internal inconsistencies. *Id.* at 2. Specifically, the November 2012 statement shows a negative statement ending balance of -$1,656.36. ECF No. 131-3 at 3, 9. However, the bank statement beginning balance ($21,245.25) plus the amount of deposits/credits ($1,500.85) minus the amount of withdrawals/debits ($131,801.78) should equal -$109,055.68, not -$1,656.36. *Id.*

6

Second, plaintiffs produced clearly different versions of what they purported to be the same bank statement in 2020 and 2021. Wells Fargo identifies some key differences:

> *Compare* the 2020 Version (Exhibit #-1 at 3 (highlighting in original, red box and line added)):
>
> | 11/26 | 123,956.14 | US Alliance Grou Des:Epay Co | ID:518987034004432 |
> |---|---|---|---|
> |  |  | Indn:Skinitemscom | Co ID:5921267938 Ccd |
> | 11/27 | 2,419.78 | US Alliance Grou Des:Epay | ID:Fmt-0087903 |
> |  |  | Indn:Skinitemscom | Co ID:Bxxxxxxxx Ccd |
>
> *With* the 2021 Version (Exhibit #-2 at 4 (red box and line added)):
>
> | 11/26 | 123,956.14 | US Alliance Grou Des:Epay | ID:518987034004432 |
> |---|---|---|---|
> |  |  | Indn:Skinitemscom | Co ID:5921267938 Ccd |
> | 11/27 | 2,419.78 | US Alliance Grou Des:Epay | ID:Fmt-0087903 |
> |  |  | Indn:Skinitemscom | Co ID:Bxxxxxxxx Ccd |

ECF No. 131-1 at 2. A Bank of America representative testified that the bank does not issue different versions of the same statement. ECF No. 131-2 at 3, 5.

Third, that same representative repeatedly testified that the bank statements plaintiffs produced "didn't come from Bank of America; they were doctored or falsified." *Id.* at 10, 13–15, 17. The representative testified that the bank statements were inconsistent with Bank of America's typical practice in at least three ways: (1) the daily balance summaries did not accurately reflect transaction activity (*id.* at 11–13, 16–17); (2) the total amount of withdrawals and debits in the November 2012 bank statement was not accurately calculated based on the itemized withdrawals and debits (*id.* at 8–9); (3) one of the bank statements used a zero rather than an "O" (*id.* at 4; *see* ECF No. 131-3 at 24). Moreover, the Vice President of Finance at USAG—the entity that supposedly debited the $123,956.14—testified that USAG had no record of this transaction. ECF No.

7

131-3 ¶ 5.  She "believe[d]" that the bank statement "has been altered," because certain numbers listed with the transactions "d[id] not match USAG's formatting." *Id.* ¶¶ 6–11.

## DISCUSSION

Federal Rule of Civil Procedure 37(b)(2)(A) permits a court to impose sanctions when a party disobeys a discovery order, including "dismissing the action or proceeding in whole or in part" or "rendering a default judgment against the disobedient party."  To determine whether dismissal is appropriate, courts generally consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quotation marks omitted).  While "dismissal or default imposed pursuant to Rule 37 is a drastic remedy," it may be "justified if the district court finds that the failure to comply with discovery orders was due to willfulness, bad faith, or any fault of the party sanctioned." *Id.* (quotation marks omitted).

Federal Rule of Civil Procedure 41(b) also authorizes dismissal of a case where the "plaintiff fails to prosecute or to comply with [the Federal Rules] or a court order."  Fed. R. Civ. P. 41(b); *see also LeSane v. Hall's Sec. Analyst, Inc.*,

239 F.3d 206, 209 (2d Cir. 2001) ("Rule 41(b) [] gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute."). In deciding whether to dismiss an action pursuant to Rule 41(b), courts consider: (1) whether the "plaintiff's failure to prosecute caused a delay of significant duration"; (2) whether the plaintiff was on "notice that further delay would result in dismissal"; (3) whether the defendant is "likely to be prejudiced by further delay"; (4) a balancing of the court's "need to alleviate court calendar congestion" with the "plaintiff's right to an opportunity for a day in court"; and (5) "the efficacy of lesser sanctions." *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). No single factor is dispositive. *Id.* "Three of the factors under Rule 41 overlap the factors considered in dismissing a case under Rule 37—the duration of delay, the efficacy of lesser sanctions and whether the plaintiff received notice of the possibility of dismissal." *Juliao v. Charles Rutenberg Realty, Inc.*, No. CV140808JFBAYS, 2018 WL 5020167, at *6 (E.D.N.Y. July 23, 2018) (report and recommendation adopted).

Dismissal here is appropriate under both Rules 41(b) and 37(b)(2)(A), even according plaintiffs the "special leniency" afforded to *pro se* litigants. *LeSane*, 239 F.3d at 209. Plaintiffs' repeated failure to comply with Judge Shields's discovery orders by not producing documents identified in the complaint demonstrates willfulness and fault. In their opposition to the motion to dismiss, plaintiffs

9

"assure[] the court that all discovery requests will be reviewed to see if any documentation is missing or incomplete." ECF No. 132 at 6. But plaintiffs have had multiple opportunities to do so after Wells Fargo identified the deficiencies in their productions. Moreover, this is not the first time that plaintiffs have represented that they would produce any missing documentation without following through. *See* ECF No. 117; ECF No. 131-1 at 7.

Plaintiffs also claim that the documents provided to Wells Fargo were "either not in the format which they had hoped for, or [they were] simply not provided to the overall liking of Wells Fargo's wishes." ECF No. 132 at 6–7. But as Wells Fargo points out, "[t]he issue is more than the 'format' of the documents"; it is the authenticity of the documents. ECF No. 133 at 2–3. This claim is also irrelevant, as plaintiffs do not respond to Wells Fargo's chief grievance—that they failed to produce all the documents referenced in their complaint.

What's more, Wells Fargo raises serious authenticity issues with respect to documents essential to plaintiffs' case. Plaintiffs appear to have fabricated emails and bank statements. Plaintiffs assert compensatory damages of $161,310.14, the bulk of which comes from the $123,956.14 that plaintiffs apparently falsified. ECF No. 46 at 36. Wells Fargo's theory that "[p]laintiffs' strategic delay and intentional non-compliance" is due to their inability to "produce authenticable

10

evidence of their claims" thus seems likely, and further supports a finding of willfulness. ECF No. 131-1 at 12.

The duration of the delay plaintiffs caused also favors dismissal. "The delays in this action are entirely attributable to plaintiff[s]." *Caussade v. United States*, 293 F.R.D. 625, 629 (S.D.N.Y. 2013). Plaintiffs have caused three attorneys to withdraw due to either authenticity, payment, or communication concerns. Consequently, Judge Shields has stayed this case four times. Plaintiffs have also repeatedly failed to comply with discovery deadlines. Indeed, their last counsel withdrew because of plaintiffs' "refus[al] to communicate with counsel despite myriad attempts by counsel to engage Mr. Marquess in communication and cooperation." ECF No. 86-1 at 3. Plaintiffs originally agreed to produce the documents identified in the complaint by September 22, 2021. ECF No. 56 at 4–5; ECF No. 72-1. Wells Fargo informed plaintiffs about missing documents on November 8, 2021, and plaintiffs' third attorney moved to withdraw shortly thereafter on November 23, 2021. ECF No. 86; ECF No. 131-4 at 4–6. On March 7, 2022, four months later and after learning that plaintiffs would proceed *pro se*, Judge Shields again ordered plaintiffs to "produce documents requested by Defendants" by April 7. Wells Fargo also resent the November 8, 2021 letter. ECF No. 131-5 at 2, 5, 28–34. A day after this deadline, on April 8, 2022, plaintiffs served a letter that did not correct any of the deficiencies identified in the

11

November 8, 2021 letter. ECF No. 131-7. Thus, while "a cursory review of the docket might support the notion that . . . Plaintiff[s] w[ere] acting to move [their] case forward . . . a closer look at Plaintiff[s'] conduct reveals neither meaningful activity nor adherence to Court directives." *Juliao*, 2018 WL 5020167, at *8.

I have considered whether a lesser sanction would be effective here. "Monetary sanctions would be meaningless," as plaintiffs' second attorney withdrew because plaintiffs had failed to pay their legal bills. *Id.* at *7. Moreover, plaintiffs have been warned of the consequences of their noncompliance. *See Valentine v. Museum of Mod. Art*, 29 F.3d 47, 50 (2d Cir. 1994) ("The severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se,* so long as a warning has been given that noncompliance can result in dismissal."). At a hearing on December 13, 2021 following Wells Fargo's first motion to dismiss for failure to prosecute, Judge Shields told the parties that Wells Fargo could file such a motion before me. ECF No. 90; ECF No. 96 at 5. In their opposition, plaintiffs do not contest that they were provided with the proper warnings. *See* ECF No. 132.

"The two additional factors to consider under Rule 41(b)—prejudice to Defendant[s] and the Court's interest in managing its docket—also weigh in favor of dismissal." *Juliao*, 2018 WL 5020167, at *7. "[T]he events giving rise to this litigation occurred in" 2012—about ten years ago—and "further delay in

12

prosecuting this claim [is] likely to prejudice [Wells Fargo's] ability to defend against this suit, as the salient events recede[] even farther into the past." *Ruzsa v. Rubenstein & Sendy Attys at L.*, 520 F.3d 176, 177 (2d Cir. 2008) (quotation marks omitted, alterations accepted). Plaintiffs waited until the statutory limitations period was coming to an end, filing the summons in this case in November 2018. *See* N.Y. Civ. Prac. L. & Rules § 213. Discovery did not commence until 2021. This has resulted in the destruction of the original Bank of America statements at issue because Bank of America's document retention policy period for bank statements is only seven years. ECF No. 131-2 at 18–19. Thus, not only is all the evidence in this case "stale," but the defendants have "no ability" of "challenging [plaintiffs'] allegations" with respect to the $123,956.14 transactions with their own evidence. *Williams v. Nassau Cnty. Corr. Ctr.*, No. 2:17-CV-4689-MKB-SJB, 2019 WL 10852889, at *6 (E.D.N.Y. Nov. 22, 2019). "At this point, the prejudice from the pending, but still nascent, litigation is substantial and justifies dismissal." *Id.*

     Finally, the Court's "need to reduce docket congestion outweighs" plaintiffs' right for an opportunity to be heard on their likely fraudulent claims. *ABL Venture Cap., LLC v. Thinomenon, Inc.*, No. 13CV3185AMDLB, 2022 WL 344231, at *5 (E.D.N.Y. Feb. 4, 2022). The Court has given plaintiffs "numerous opportunities to move the action forward," but plaintiffs have done only "the bare minimum."

13

*Id.* Moreover, "special solicitude for the difficulties that a *pro se* plaintiff must face does not extend to the wil[l]ful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *McDonald v. Head Crim. Ct. Supervisor Officer*, 117 F.R.D. 55, 58 (S.D.N.Y. 1987), *aff'd,* 850 F.2d 121 (2d Cir. 1988).

There is yet another basis for the dismissal of plaintiff Skintrigue. As early as June 21, 2021, Judge Shields informed plaintiff Marquess that while he could proceed *pro se* with respect to himself, he could not represent Skintrigue. This is because "it is well-settled law that a corporation may appear in the federal courts only through licensed counsel." *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006) (quotation marks omitted). On January 20, 2022, after Marquess informed the court that he would proceed *pro se*, Judge Shields warned Marquess that his failure to obtain counsel to represent Skintrigue "may result in a dismissal of all claims by Skintrigue, Inc. for failure to prosecute." During a March 2022 status conference, Judge Shields again reminded Marquess of the issue and Marquess represented that he intended to dismiss Skintrigue from the suit. ECF No. 127 at 3. However, Marquess still has not dismissed Skintrigue's claims. In his opposition to the defendants' motion to dismiss, he stated that he would "file the appropriate paperwork and motion [to dismiss Skintrigue] no later than 5:00 PM on Friday, June 3, 2022." ECF No. 132 at 17. But Marquess has yet

14

to file such a motion. Nevertheless, Marquess's failure to procure counsel for Skintrigue despite multiple warnings provides another basis for dismissing this entity.

## CONCLUSION

The motion to dismiss this action is granted with prejudice.

                                          **SO ORDERED.**

Brooklyn, New York                                  *Edward R. Korman*
July 15, 2022                                            Edward R. Korman
                                                       United States District Judge