UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

GREGORY MARQUESS d/b/a
SKINITEMS.COM and SKINTRIGUE, INC.,

                    Plaintiffs,

v.

CARDFLEX, INC. d/b/a CLIQ,
WELLS FARGO BANK, N.A.,
U.S. ALLIANCE GROUP, INC.,
and JOHN DOES 1-10 INCLUSIVE,

                    Defendants.

---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

19-CV-04790 (ERK) (LGD)

**LEE G. DUNST**, Magistrate Judge:

       Presently before the Court are Defendants' motions seeking attorneys' fees, costs, and

sanctions of more than $500,000 following District Judge Edward R. Korman's dismissal of this

action on July 15, 2022.  Electronic Case File Number ("ECF No.") 135.  On August 10, 2022,

Judge Korman referred the following motions to the undersigned for a Report and

Recommendation: Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion for attorney

fees and costs (ECF No. 137), a motion for joinder by Defendant U.S. Alliance Group, Inc.

("USAG") (ECF No. 139), and a related motion for attorneys' fees by Defendant CardFlex, Inc.

("CardFlex") (ECF No. 154).  Also before the Court are related motions to strike portions of

Wells Fargo's aforementioned filings by *pro se* Plaintiffs' former attorneys Howard Bender

(ECF No. 153) and Holley Hoffman (ECF No. 156).  For the reasons set forth herein, the

undersigned recommends that Judge Korman DENY WITH PREJUDICE Defendants' motions

for fees, costs, and sanctions at ECF Nos. 137, 139, and 154; and DENY AS MOOT Plaintiffs'

former attorneys' motions to strike at ECF Nos. 153 & 156.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court incorporates and summarizes the factual background set forth in previous Orders by Judge Korman in this case.  ECF Nos. 45 & 135.

### A.    Plaintiffs' Amended Complaint[1]

Plaintiff Gregory Marquess d/b/a/ Skinitems.com ("Skinitems") and a separate Plaintiff, Skintrigue, Inc. ("Skintrigue") – a company owned and operated by Marquess – commenced this action on August 20, 2019, and asserted claims including breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and fraud against the defendants.  ECF No. 1.  Plaintiffs later filed an Amended Complaint on December 27, 2019, which certain Defendants moved to dismiss.  ECF Nos. 28 & 31.

In the Amended Complaint, Marquess alleges that he sought to secure credit card processing services[2] (specifically a Member Service Provider ("MSP")) for his Skinitems

_____

[1] These facts are largely a summary of Judge Korman's factual background outlined in ECF No. 45.

[2] Judge Korman's February 2, 2021 Order provides a helpful background on this process:

As relevant here, "a [credit or debit] card transaction involves four parties: (1) a cardholder, (2) an issuing bank, (3) an acquiring bank, and (4) a merchant." ECF No. 28 at 4 ¶ 20. Both the issuing and acquiring banks are members of a relevant card association like Visa or Mastercard. A cardholder receives his or her card from the issuing bank. When a cardholder makes a purchase from a merchant, that cardholder's issuing bank sends payment to the acquiring bank, which in turn forwards it on to the merchant. In order to accept card payments, a merchant must find an acquiring bank willing to provide these payment processing services. In practice, many acquiring banks contract some or all of their payment processing services out to third parties. These "Member Service Providers" (MSPs) agree to solicit merchants to sign up with an acquiring bank, process payments on the acquiring bank's behalf, and assist merchants using the acquiring bank's processing services.
. . .
In this case, plaintiffs allege that CardFlex acted as an MSP on behalf of acquiring

website (which was a "discount website" he operated).  ECF No. 45 at 1-3 (citing ECF No. 28 at 5 ¶ 24).  He was not seeking an MSP for the other website he operated, Skintrigue, which was "an online seller of high-end, physician-exclusive dermatology products."  *Id.* (citing ECF No. 28 at 5 ¶ 23).  Marquess was introduced to an individual named David Ventura, who told him that he could obtain new card processing services for Skinitems.  ECF No. 28 at 5 ¶ 25.  Marquess provided certain information to Ventura to send to Wells Fargo, a potential acquiring bank.  *Id.* at 6 ¶ 28.  The initial MSP did not want to approve his application, because it could not conduct an on-site inspection of his office.  *Id.* at 7 ¶ 30.  Ventura told him he could find another processor that would approve his site while still using Wells Fargo as the acquiring bank.  *Id.* Marquess soon thereafter received an email from CardFlex asking him to complete his application; according to Ventura, CardFlex was a highly rated merchant processor.  *Id.* at 8 ¶ 36.  Marquess later received an email from CardFlex with two attachments he could not open, and he later discovered that these documents included a completed merchant application to CardFlex with an incorrect email address and phone number for Skinitems.  *Id.* at 9 ¶¶ 39-42.  According to Plaintiffs, "[t]his was significant because consumers may attempt a chargeback if they do not recognize a merchant's information when it appears on their credit card statements."  ECF No. 45 at 5.  Marquess alleges that Ventura (1) copied all his information from a previous application; (2) forged his signature; and (3) acted as an agent for Defendants when doing so.  ECF No. 28 at 9-10 ¶¶ 43-46.

On August 23, 2010, the Skinitems website began processing online transactions, and the

---

bank Wells Fargo to provide processing services for the Skinitems website, and USAG acted in turn as the assignee and/or agent of CardFlex. ECF No. 28 at 5 ¶ 22.

ECF No. 45 at 2-3.

next day CardFlex emailed Marquess to inform him his card processing account had been activated. *Id.* at 14 ¶¶ 70-71. However, on January 31, 2011, Marquess learned that incorrect contact information was being provided by CardFlex to Skinitems customers. *Id.* at 15 ¶ 72. As a result, he contacted Ventura, CardFlex, and Wells Fargo numerous times from 2011 to 2012 to update his information to avoid chargebacks, but the information was never fixed. *Id*. at 14-15 ¶ 74.

On February 11, 2011, Marquess received an email from USAG, informing him that they were creating a reserve account for Skinitems and would be withholding ten percent of its monthly gross sales. *Id*. at 17 ¶ 77. He was not previously aware of USAG's association with CardFlex and refused to authorize the reserve account. *Id.* Nevertheless, USAG began withholding amounts, totaling $33,562.21, for approximately the next two years. *Id.* at 17 ¶ 79.

On February 14, 2011, CardFlex informed Marquess that his account was being flagged for risk because of multiple negative Address Verification Systems ("AVS") transactions (which occur when a person attempting to purchase merchandise enters incorrect information in the billing fields). *Id.* at 17 ¶ 80. Marquess responded that it was the responsibility of the processor to handle these AVS transactions. *Id.* at 17 ¶ 81. USAG then informed him that they received his request to correct the contact information being sent to Skinitems customers but failed to correct it. *Id*. at 18 ¶ 82. Marquess continued to attempt to address this issue by reaching out to CardFlex, USAG, and Ventura. *Id*. at 18-20 ¶¶ 83-92.

On February 1, 2012, USAG informed Marquess that Wells Fargo noted an increase in chargeback activity and, the following month, began withholding Skinitems' sales. *Id.* at 21 ¶ 93. Marquess explained that this was caused by incorrect contact information being provided to

Skinitems' customers, and USAG subsequently released the funds. *Id*. at 21 ¶¶ 93-99.

On November 26, 2012, USAG informed Marquess that his account would be terminated and assessed a termination fee of $2,419.78. *Id.* at 22 ¶ 101. Both Skinitems and Skintrigue websites were then unable to process credit or debit transactions (even though Skintrigue operated independently from Skinitems and was linked to a different bank account). *Id.* at 22 ¶¶ 101-02. Marquess alleged that on the same date, a total of $123,941.32 was seized by Defendants from bank accounts belonging to Marquess and Skintrigue and the termination fee of $2,419.78 was debited from the Skinitems' merchant account. *Id*. at 23 ¶¶ 103-05.

The following day, Marquess was informed by the MSP providing services to Skintrigue that his account was terminated because Skintrigue had been placed on the Terminated Merchant File/ Member Alert to Control High Risk (which is essentially a "blacklist" that prevents merchants with high-risk accounts from opening an account with an MSP). *Id*. at 24 ¶¶ 107-08. Marquess later learned he was placed on this list by "CardFlex at the request of Wells Fargo." *Id*. at 25 ¶ 109. According to Plaintiffs, American Express also terminated processing services for Skinitems and Skintrigue. *Id*. at 26 ¶ 114. As a result, the dermatology products sold by Plaintiffs began to expire and allegedly caused losses of hundreds of thousands of dollars for Marquess. *Id*. at 26 ¶¶ 115-16.

Marquess attempted to access the money being held in reserve by CardFlex (which now totaled $165,496.32), but CardFlex said they were assessing an early termination fee of $145,111.09 and would only return $20,385.23. *Id*. at 27-28 ¶¶ 118-22. After further discussions, CardFlex offered him "50/50" settlement[3] if Marquess agreed to sign a release,

---

[3] Marquess incurred an early termination fee of $165,111.09 and the "50/50" settlement offered him $82,555.54 from his reserve account if he agreed to sign a release. ECF No. 28 ¶ 126.

which he refused; CardFlex then agreed to a $250 early termination fee and that it would return the rest of the funds. *Id*. at 28-29 ¶¶ 126-29. However, to date, he has not been refunded any amounts from the reserve account. *Id*. at 29 ¶ 128.

**B.  Judge Korman's February 2, 2021 Decision**

On February 2, 2021, Judge Korman granted in part Defendants' motion to dismiss the Amended Complaint and dismissed Skintrigue's causes of action for breach of contract and the covenant of good faith and fair dealing for failure to state a claim. ECF No. 45 at 26-27. Judge Korman also dismissed Plaintiffs' causes of action for negligence, conversion, and making materially false and misleading statements in violation of N.Y. Gen Bus. Law § 349(h). *Id.* Judge Korman granted leave for Plaintiffs to file another amended complaint. *Id.*

**C.  Plaintiffs' Second Amended Complaint**

Plaintiffs filed the Second Amended Complaint ("SAC") on March 3, 2021, alleging (1) Marquess's claim for breach of contract; (2) Marquess's claim for breach of the implied covenant of good faith and fair dealing; (3) Plaintiffs' claim for unjust enrichment; and (4) Plaintiffs' money had and received claim. ECF No. 46 ¶¶ 133-60.

**D.  Judge Korman's July 15, 2022 Decision**

On June 15, 2022, Defendants Wells Fargo Bank, USAG, and CardFlex filed a motion to dismiss the SAC, as well as seeking sanctions. ECF Nos. 131-35.

In their motions, Defendants alleged that Plaintiffs fabricated documents (including bank records); Plaintiffs forced their three prior attorneys to withdraw resulting in four discovery stays; and Plaintiffs repeatedly and willfully ignored Magistrate Judge Anne Y. Shields's discovery orders.[4] ECF No. 131. Defendants requested that Judge Korman dismiss the case

---

[4] On June 10, 2022, this case was randomly reassigned to the undersigned magistrate judge. June 10, 2022 Order.

with prejudice.  Plaintiff (who was now proceeding *pro se*) responded in ECF No. 132.

On July 15, 2022, Judge Korman granted the motion to dismiss the SAC with prejudice and denied the motion for other sanctions.  ECF No. 135.  Judge Korman's opinion outlined numerous factual findings that are relevant to the instant motions.

### i.  Plaintiffs' Former Attorneys

Plaintiffs had three attorneys throughout the course of this litigation.  ECF No. 135 at 2-3.  Plaintiffs' first attorney, Jonathan Miller, withdrew on May 1, 2019 after it appeared Plaintiffs had fabricated certain emails.  *Id.*  ("the alleged author of the emails stated that she did not write them, and there are numerous clear discrepancies between the author's real emails and the ones Plaintiffs alleged that she wrote"); ECF No. 64-4.

In November 2020, Plaintiffs' second attorney, Howard Bender, subpoenaed Google for Plaintiffs' email account to recover the original emails and to produce them.  *Id.* (citing ECF No. 64-6 at 4).  After Google responded to the subpoena, Mr. Bender could not locate the emails at issue.  *Id.* at 2.  Defendants also alerted Mr. Bender of the issues with the authenticity of Plaintiffs' bank account records.  ECF No. 64-1 at 5-8.  In June 2021, Mr. Bender moved to withdraw due to Plaintiffs' failure to pay him, which Judge Shields granted.  ECF. No. 60-1 ¶ 6.

In July 2021, Plaintiffs retained a third attorney, Holley Hoffman, who took the case *pro bono*.  ECF No. 74.  In November 2021, Hoffman moved to withdraw due to an inability to communicate with Marquess and his failure to pay for her costs incurred in connection with this case.  ECF Nos. 86 & 87.  Marquess then proceeded *pro se*.  ECF No. 94.

### ii.  Failure To Follow Discovery Orders

Over the course of the litigation, Plaintiffs refused to comply with multiple discovery orders and caused Judge Shields to issue multiple stays of discovery, which delayed the case.

ECF No. 135 at 4-6.  Plaintiffs failed to comply with numerous orders by Judge Shields to produce documents referenced in the original Complaint, as well as other documents and information.  *Id.*  Plaintiffs participated in meet and confer discussions with Defendants, and stated they would produce documents, but failed to comply with their assurances.  *Id.*

### iii.   Bank Statements Produced During Discovery

Judge Korman explained that, in addition to the purportedly falsified emails, Defendants "plausibly accuse [P]laintiffs of 'clearly fabricat[ing] Bank of America statements.'"  ECF No. 135 at 6 (citing ECF No. 131-1 at 2).  The bank statements produced by Plaintiffs show that Defendants seized $123,956.14 from Plaintiffs' accounts, but this document appears to be fabricated, and Bank of America has no record of this purported transaction.  *Id.*  A similar fabricated bank record was produced on two other occasions by Plaintiffs.  ECF No. 131-1 at 2.

### iv.   Judge Korman's Ruling

Judge Korman dismissed the SAC pursuant to Federal Rule of Civil Procedure 41(b) and 37(b)(2)(A), given, *inter alia*, "Plaintiffs' repeated failure to comply with Judge Shields's discovery orders by not producing documents identified in the complaint[, which] demonstrates willfulness and fault;" "Plaintiffs appear to have fabricated emails and bank statements;" "Plaintiffs have caused three attorneys to withdraw due to either authenticity, payment, or communication concerns;" and "Plaintiffs have also repeatedly failed to comply with discovery deadlines."  ECF No. 135 at 8-11.  Judge Korman considered whether a lesser sanction would be appropriate, but found "[m]onetary sanctions would be meaningless, as plaintiffs' second attorney withdrew because plaintiffs had failed to pay their legal bills."  *Id.* at 12 (internal

quotations and citations omitted).

### E.      Plaintiffs' Appeal

Plaintiff appealed the dismissal of this case to the United States Court of Appeals for the

Second Circuit (ECF No. 145) (Court of Appeals Docket # 22-1822) and filed an Affidavit

Accompanying a Motion for Permission to Appeal In Forma Pauperis (ECF No. 146).  In this

affidavit, Marquess claimed, "[m]y financial condition is not good because of the four years I

have spent litigating this case."  ECF No. 146 at 6.  On November 21, 2022, the Second Circuit

dismissed the appeal for Appellants' failure to comply with Court orders.[5]  *Marquess v.*

*Cardflex, Inc.*, 22-1822, Docket Nos. 24 & 25 (2d Cir.).

### F.      The Instant Motions For Fees

Currently pending for a Report and Recommendation (pursuant to Judge Korman's

August 10, 2022 referral order) are Wells Fargo Bank's motion for attorney fees and costs (ECF

No. 137); motion for joinder by USAG (ECF No. 139); motion to strike Wells Fargo's filings by

Howard Bender (ECF No. 153) and Holley Hoffman (ECF No. 156); motion for attorneys' fees

by Cardflex (ECF No. 154); and responses and replies in connection with these motions.

#### i.  Defendants' Motions For Fees and Costs

Defendant Wells Fargo requests that the Court award its fees and costs of over

$426,347.01.  ECF No. 137-1 at 15.  Defendant USAG in its motion for joinder asks for

$54,336.63 in legal fees and costs.  ECF No. 139-1 at 3.  Defendant CardFlex seeks $43,371.00

in fees and costs.  ECF No. 154 at 6.  Wells Fargo's motion for fees and related briefing lays out

numerous arguments against Plaintiffs (whereas USAG and CardFlex primarily join in the

---

[5] While the appeal was pending, the motions at issue in this Report and Recommendation were held in abeyance pursuant to Judge Korman's August 23, 2022 Order.  Hoffman filed a motion for reconsideration (ECF No. 169) of the Order deferring ruling on the motion for fees (ECF No. 137), which Judge Korman denied on October 25, 2022.  October 25, 2022 Order.

motion and set forth the basis for their respective recovery).

### a. Wells Fargo's Motion for Fees

Wells Fargo argues that the Court should award fees and costs pursuant to (1) its inherent authority, (2) 28 U.S.C. § 1927, (3) Federal Rule of Civil Procedure 11, and (4) Federal Rule of Civil Procedure 37(b)(2)(C).  ECF No. 137-1 at 7; ECF No. 151.  In support of this application, Wells Fargo outlines several facts concerning the authenticity of emails and bank statements that they raised with Plaintiffs' former attorneys Bender and Hoffman at numerous points over the course of this litigation.  ECF No. 137-1 at 2-7.  Wells Fargo argues that because of Plaintiffs' fabrication of "key" evidence (primarily focusing on the falsified bank records) and his lawyers' willingness to proceed with the case despite this warning, Plaintiffs, Bender, and Hoffman have committed sanctionable conduct.  *Id.* at 2.

Wells Fargo first contends that the Court should award fees pursuant to its inherent authority, "to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).  Wells Fargo next argues the Court should issue an award under Section 1927, which "allows a court to impose sanctions when an attorney multiplies the proceedings unreasonably and vexatiously and requires a showing of bad faith."  ECF No. 137-1 at 8 (citing *Patchogue-Medford Union Free Sch. Dist.*, No. 04-CV-2947 (JS), 2010 WL 2771845, at *3 (E.D.N.Y. July 13, 2010)).  Wells Fargo further seeks an award pursuant to Rule 11, which prohibits false information being submitted to the Court for an "improper purpose;" "frivolous argument[s];" and "factual contentions [without] evidentiary support."  *Id.* at 9.  Finally, Wells Fargo argues for an award under Rule 37(b)(2)(C), which contains a fee shifting provision when a party fails to comply with discovery orders.[6]  *Id.*

---

[6] In the alternative, Wells Fargo argues that the Court should permit discovery "to determine [Bender's and Hoffman's] knowledge of Plaintiffs' scheme" under the "crime-fraud

at 12.

**b.  Responses by Bender and Hoffman**

Bender and Hoffman respond to the various motions in Bender's Affidavit (ECF No. 141); Bender's Response to Wells Fargo (ECF No. 140); and Hoffman's Response to Wells Fargo (ECF No. 142).[7]

Bender's Declaration, submitted under penalty of perjury, provides a notable and detailed factual outline of the circumstances at issue and his relevant actions.  Bender further affirms that Plaintiffs' claims were always colorable and notes that Judge Korman dismissed the action based on Plaintiffs' failure to comply with discovery orders and the fact that Skintrigue was not represented by counsel as a corporation.  According to Bender, there was no final decision of the merits of the case.  However, Bender states his view that "Plaintiffs' claims were always meritorious, justiciable, and colorable."  ECF No. 141 ¶ 2.

With respect to the purportedly false emails sent by Tiffany Georskey[8], Bender outlines efforts he took to understand whether these emails were falsified and the correspondence he had

---

exception" to attorney-client privilege, while arguing "Plaintiffs utilized their attorneys to pursue this lawsuit based on false transactions and as a part of a strategy to *extort* money from Wells Fargo."  ECF No. 137-1 at 14-15 (emphasis added).

[7] On December 20, 2022, the Court requested that Marquess (who is currently proceeding *pro se*) respond to the various motions pending before the Court (namely, ECF No. 137).  As of the date of this Report and Recommendation, he has not responded.  However, the Court did consider the arguments in Marqeuss's Opposition (ECF No. 132) to Defendants' motion to dismiss to the instant motions for fees.  The Court also considered the facts and arguments outlined by Bender and Hoffman as potential arguments on behalf of Marquess in light of his *pro se* status.  *See generally Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (Second Circuit "liberally construe[s] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." (internal quotation marks and citations omitted)).

[8] Tiffany Georskey was purportedly a CardFlex employee.  ECF No. 28 ¶ 113.

with counsel for CardFlex.  ECF No. 141 ¶¶ 20-29.  This correspondence apparently left him unconvinced that the emails were false.  ECF No. 141 ¶ 26; ECF No. 141-5.  He further noted that Georskey did not submit a statement (sworn or unsworn) denying that she sent the emails in question.[9]  ECF No. 141 ¶ 29.

Bender further explains his efforts to determine whether the purportedly falsified bank records were authentic, including issuing a joint subpoena to Bank of America to retrieve the bank records at issue.  ECF No. 141 ¶¶ 30-59.  Bender now affirms, "I assure the Court, under oath and subject to penalty of perjury, that at no time whatsoever did Marquess ever represent to me that those documents were anything but genuine copies of the documents he received from Bank of America in September 2016 and that I relied on Marquess's representations that the documents were genuine when I made allegations in the Complaint."  *Id.* ¶ 49.

Bender further explains the circumstances surrounding his withdrawal as Plaintiffs' counsel, stating that he withdrew due to fees owed to him and remained on as counsel through certain depositions, despite outstanding fees owed to him.  *Id.* ¶¶ 60-72.  He further notes that he was not served with a Rule 11 motion at any point prior to Wells Fargo's filing of the instant motion.  *Id.* ¶ 72.  In opposing the imposition of sanctions, Bender provides additional facts, including that Hoffman advised him that she had been counsel to other parties who also obtained merchant processing services from CardFlex, USAG, and/or Wells Fargo and that the facts in those cases were similar to the facts alleged here, namely "with respect to the use of incorrect addresses, alleged early termination events resulting in exorbitant early termination fees, and merchants being placed on the TMF/MATCH list upon termination."  *Id.* ¶ 80.  He further

---

[9] Notably, Bender's Declaration does not discuss his November 2020 subpoena to Google for the relevant emails; the fact that Google provided Marquess access to the account; and the fact that the purported Georskey emails were not recovered in the Google email account.  *See* ECF No. 64-6.

explains that "[a]s a solo practitioner, a fee award in this amount would be devastating" and requests the Court vindicate him beyond denying fees in this "frivolous motion." *Id.* ¶ 91.

Bender's memorandum of law in opposition to Wells Fargo's motion for fees argues that Wells Fargo did not comply with the safe harbor provision of Rule 11; there is no proof of bad faith on his part; Plaintiffs' claims were colorable; there is no evidence of improper purpose; if any fees are awarded, they should be limited to the alleged misconduct; the Court should not permit discovery; and Wells Fargo brought this motion in bad faith.  ECF No. 140.

Hoffman's opposition to Wells Fargo's motion alleges, *inter alia*, misstatements of fact by Wells Fargo and argues Defendants violated the New York Rules of Professional Responsibility in this case.  ECF No. 142.  Hoffman argues that the crux of Wells Fargo's argument centers on a calculation of damages, which is not directly relevant to the key legal issues of the case.  *Id.* at 2.  Hoffman contends that Wells Fargo's claims that this lawsuit was "fraudulent" are belied by the fact that she was counsel to parties in similar cases against the same defendants with similar facts.  *Id.* at 3-4.  Hoffman explains (which Bender did similarly) that when Bender and CardFlex's counsel corresponded regarding the authenticity of Georskey's emails, the claimed evidence for fabrication was contradicted by documents from previous cases. *Id.* at 5-6.  Hoffman further argues Georskey "never provided an affidavit or any other document denying the emails were authentic.  Georskey has *never* been heard from.  To date, *no* evidence has ever been presented to support [Defendants'] claim."  *Id.* at 6 (emphasis in original).  With respect to the Bank of America bank statements at issue, Hoffman notes that they are actually a small portion of Plaintiffs' previously claimed damages.  *Id.* at 7-11.  Consequently, she argues Wells Fargo is not entitled to fees or discovery and seeks $17,382.50 for her claim of fees and

sanctions against Wells Fargo.

### G.    The Motions To Strike

Bender and Hoffman additionally seek to strike portions of Wells Fargo's filings, arguing, *inter alia*, they were improperly filed, violated the Court's local rules, and offered new evidence on reply.  ECF Nos. 153, 156, 161, & 162.

## II.    LEGAL STANDARDS

### A.    Legal Fees

The "basic point of reference" when considering motions for attorneys' fees and costs is "the bedrock principle known as the 'American Rule': [e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (internal citations and quotations omitted).  Here, Defendants claim numerous potential avenues whereby a Court may sanction a party and could award attorneys' fees and costs.

### B.    Inherent Authority

The United States Supreme Court has explained that:

> Federal courts possess certain "inherent powers," not conferred by rule or statute,
> "to manage their own affairs so as to achieve the orderly and expeditious
> disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631, 82 S.Ct.
> 1386, 8 L.Ed.2d 734 (1962). That authority includes "the ability to fashion an
> appropriate sanction for conduct which abuses the judicial process." *Chambers v.
> NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). And
> one permissible sanction is an "assessment of attorney's fees"—an order . . .
> instructing a party that has acted in bad faith to reimburse legal fees and costs
> incurred by the other side. *Id*., at 45, 111 S.Ct. 2123.

*Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 107 (2017).  However, such an award should not be punitive, and should "go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior."  *Id*. at 108 (citing *Mine Workers v. Bagwell*, 512 U.S. 821, 826-830 (1994)).  If

legal fees would have been incurred in the absence of sanctioned conduct, then an award of fees would generally be inappropriate.  *Id.* at 109 ("The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct.").

In determining whether to wield this inherent authority, "a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay."  *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986), *cert. denied*, 480 U.S. 918 (1987) ("[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.") (citation and internal quotation marks omitted); *but see United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000) (explaining that a court does not need to find bad faith to invoke its inherent power to sanction an attorney when the misconduct "involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit").

### C.    28 U.S.C. § 1927

Section 1927 provides, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . .  who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The Second Circuit has explained:

> Section 1927 authorizes the imposition of sanctions when "there is a clear showing of bad faith on the part of an attorney." *Shafii v. British Airways*, PLC, 83 F.3d 566, 571 (2d Cir.1996); *accord Oliver*i, 803 F.2d at 1273. As with sanctions imposed pursuant to a court's inherent power, in the § 1927 context, bad faith may be inferred "only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Shafii*, 83 F.3d at 571 (internal quotation marks omitted). Thus, in practice, "the only meaningful difference between an award made under § 1927

and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri*, 803 F.2d at 1273.

*Schlaifer*, 194 F.3d at 336.

### D.     Federal Rule of Civil Procedure 11

Rule 11(b) mandates that an attorney making a filing certifies that:

(1) [the pleading] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on a lack of information or belief.

Fed. R. Civ. P. 11.  Pursuant to this rule, a motion for sanctions may be made for violating Rule P. 11(b). However, there is a safe harbor provision, whereby a motion under this rule must be made separately from other motions and must be served on an attorney before filing, allowing the subject of the motion 21 days to correct the matters at issue.  Fed. R. Civ. P. 11(c)(2).

The standard for awarding fees pursuant to such a motion is "objective unreasonableness" and does not require bad faith.  *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000); *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 357 n.10 (S.D.N.Y. 2002).  Courts generally have wide discretion in considering such a motion, although such discretion should be "made with restraint."  *ED Cap., LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 81 (S.D.N.Y. 2016) (citing *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)).

### E.     Federal Rule of Civil Procedure 37(b)(2)(C)

Rule 37(b) states, in relevant part, that "[i]f a party . . .  fails to obey an order to provide

or permit discovery . . . the court where the action is pending may issue further just orders."

Such an order could include an award of payments for expenses "including attorney's fees,

caused by the failure, unless the failure was substantially justified or other circumstances make

an award of expenses unjust." Fed R. Civ. P. 37(b)(2)(C).

## III. DISCUSSION

The Court does not find that Plaintiffs' former attorneys Bender or Hoffman should be

sanctioned, as there is no credible evidence that they acted in anything other than good faith, and

they affirm their belief that Plaintiffs' claims were colorable. With respect to Marquess, the

Court finds that there likely was a willful effort to falsify documents, including the Bank of

America bank records; however, given Judge Korman's dismissal of the case and Mr.

Marquess's substantial legal fees already incurred in this action, the Court does not find further

sanctions to be appropriate against Plaintiffs.

### A.    Motions for Sanctions Against Bender and Hoffman

The Court concludes that neither Bender nor Hoffman engaged in sanctionable conduct.

As noted previously, Defendants primarily allege that Bender and Hoffman assisted Marquess in

his efforts to present false evidence, which purportedly permeated the case and accounted for a

significant portion of the claimed damages. However, the Court instead finds that both Bender

and Hoffman acted reasonably under the circumstances in pursuing what they believed to be a

meritorious case.

The Court credits and accepts the statements made in Bender's Declaration at ECF No.

141. Bender explains his efforts to investigate the claimed fabricated emails and bank records.

*Id.* ¶¶ 20-59. His efforts in both instances appear reasonable to the Court. *Id.* ¶¶ 2-19. Given

this thorough and forthcoming Declaration, the Court does not find that any sanctions are

warranted against Bender and does not believe further discovery would be appropriate in this instance. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 93 (2d Cir. 2003) (vacating an award for sanctions where the district court accepted representations that lawyers acted with subjective good faith); *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) (declining to allow discovery pursuant the crime-fraud exception to attorney-client privilege when there was no probable cause to believe that a crime or fraud had been attempted).

With respect to Hoffman, the Court also is persuaded by her filings that she previously handled similar cases against Defendants and consequently found Plaintiffs' claims to be colorable in this case. ECF No. 142. Her efforts representing Plaintiff *pro bono* appear to have been conducted in good faith manner. Therefore, the Court does not find any reason to sanction Hoffman or allow Defendants to engage in discovery against her. *Pennie*, 323 F.3d at 93 (denying an award for sanctions when the Court found good faith); *Roe*, 168 F.3d at 71 (denying discovery into attorney-client privileged communications when there was no probable cause to believe that a crime or fraud had been attempted).

### B.    Motions For Sanctions Against Plaintiffs

Although the Court does find Marquess's apparent fabrication of evidence to likely be willful in this case, given the record at hand, he has already suffered adequate sanctions.

On July 15, 2022, Judge Korman granted Defendants' motion to dismiss for failure to prosecute and considered their motion for sanctions. Judge Korman noted the various delays caused by Plaintiff and the failure to abide by discovery orders. ECF No. 135 at 4-6. Judge Korman also noted the allegedly fabricated bank records. *Id.* at 6-8. Judge Korman considered monetary sanctions, but stated "'[m]onetary sanctions would be meaningless,' as plaintiffs' second attorney withdrew because plaintiffs had failed to pay their legal bills." *Id.* at 12. The

Court notes, therefore, that Marquess already suffered a severe sanction in this case – the dismissal of the case; Bender and Hoffman have unpaid fees and costs; and Marquess has also noted his financial hardship as a result of prosecuting this case.  *See* ECF No. 146.

The Court believes that any further sanctions against Marquess, Bender, or Hoffman (such as Defendants' request for more than $500,000) would be excessive and unjust at this point after the already "extreme" remedy of dismissal with prejudice.  *See Davenport v. Charter Commc'ns, LLC*, No. 12 Civ. 7 (AGF), 2016 WL 5371575, at *3 (E.D. Mo. Sept. 26, 2016) ("[T]he Court finds that such an award would be unjust, particularly on top of the already harsh sanction of dismissal with prejudice."); *Cooper v. E. Coast Assemblers, Inc.*, No. 12–80995–CIV, 2014 WL 7717565, at *3 (S.D. Fla. Oct. 20, 2014) (finding the sanction of dismissal sufficient to address opt-in plaintiffs' failure to respond to discovery, and holding that imposing attorneys' fees against plaintiffs would be unjust), *report and recommendation adopted*, No. 12–80995–CIV, 2015 WL 390501 (S.D. Fla. Jan. 28, 2015); *Smith v. Fischer*, No. 13-CV-6127-FPG, 2019 WL 4750548, at *2 (W.D.N.Y. Sept. 30, 2019) (declining to award fees pursuant to Rule 37, finding that awarding fees would place an "unreasonable burden upon [*pro se*] Plaintiff, who could not afford the filing fee to bring this action").

### C.    Wells Fargo's Motion

The Court finds Wells Fargo's motion fails to comply with Rule P. 11, levies inappropriate allegations against Plaintiff and his attorneys, and is in violation of the Court's local rules.

As Bender and Hoffman note, Rule 11 provides a 21-day safe harbor provision whereby an attorney may remediate issues raised in a proposed motion before it is filed before the Court. In this instance, Wells Fargo does not appear to have complied with this rule, despite the various

concerns they previously raised with Bender and Hoffman.

More notably, Wells Fargo makes serious and unsubstantiated allegations against Bender and Hoffman in a manner that violates this Court's local rules.  In bringing their motion seeking hundreds of thousands of dollars in fees against Plaintiffs' former attorneys, Wells Fargo also accused them of assisting Marquess in trying to "extort" Defendants.  ECF No. 137-1 at 14-15. The Court finds the allegations in these submissions, and the manner in which they were brought, violate the spirit of Local Rules 37.3 ("Prior to seeking judicial resolution of a discovery or non-dispositive pretrial dispute, the attorneys for the affected parties or non-party witness shall attempt to confer in good faith in person or by telephone in an effort to resolve the dispute") and 26.4 ("Counsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process and to be courteous in their dealings with each other"); *see Fields v. Bayerische Motoren Werke Aktiengesellschaft*, 594 F. Supp. 3d 530, 533 (E.D.N.Y. 2022) (admonishing counsel for failing to engage in a good faith effort to cooperate and reduce needless motion practice).  The Court finds that pursuant to Rule 11 and the local rules, these motions should have been brought in a more good faith and courteous manner, which could have reduced the serious accusations brought by both sides and minimized the need for over 1,100 pages in related briefings and exhibits.

### D.    Motion To Strike

The Court denies as moot Bender and Hoffman's Motions to Strike at ECF No. 153 and 156, as the Court has addressed (and recommends denial of) Defendants' motions on the merits with the benefit of the full briefing papers that have been submitted by all parties.  *See Lopez v. Hollisco Owners' Corp.*, 147 F. Supp. 3d 71, 79 (E.D.N.Y. 2015), *aff'd*, 669 F. App'x 590 (2d Cir. 2016) ("The court is preferable to decide cases on the merits, rather than on possible

procedural errors. It exercises its discretion to consider the records as evidence.").

## IV. CONCLUSION

For the reasons stated above, the undersigned recommends that Judge Korman DENY WITH PREJUDICE Defendants' motions for fees, costs, and sanctions at ECF Nos. 137, 139, and 154; and DENY AS MOOT the motions to strike at ECF Nos. 153 and 156.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Korman. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).


                                                    **SO ORDERED**:

Dated: Central Islip, New York
          February 8, 2023                          /s/ Lee G. Dunst
                                                    LEE G. DUNST
                                                    United States Magistrate Judge